CINCINNATI, COL. & W. TPK. CO. *v.* CINCINNATI & COL. TRAC. CO.

1. Jurisdictional questions will be determined by the courts, *sua sponte,* whether raised by the litigants or not. Jurisdiction can not be acquired by consent.
2. Where equity has jurisdiction of the person it will, as a general rule, entertain suits involving contracts of conveyance or other obligations of a like nature relating to an extra-territorial *corpus.* But this rule is not applicable to extra-territorial torts, except where some act of the person can sufficiently execute the decree, or where imprisonmnt of the person is the most proper means to enforce performance. The *locus in quo* must be within the absolute jurisdiction of the court.
3. Compensation in money need not be made in advance before private property can be taken for the purpose of making or repairing roads which shall be open to the public without charge; it is sufficient, in such cases, that provision be made by law for compensation so that the owner may secure compensation if he desires. This rule applies to existing toll roads owned by a turnpike company, which become streets by reason of being included within territory subsequently annexed to a municipality.
4. The annexation of territory including a roadway owned by a turnpike company, and its continuous use as a street, makes it a public street within the meaning of Section 4391, Revised Statutes, as amended April 4, 1880 (75 O. L., 90), which provides that where a tollgate is brought within a municipality by the extension of the corporate limits, the tollgate shall be removed to a point not nearer to such limits than eighty rods, and so much of such road as is included in the annexed territory shall become a public street; and, as the intention of said amendatory statute is, in such cases, to divest turnpike companies of such portion of their property, and as a duty is devolved upon village councils to take full and entire supervision and control of all public highways, bridges, etc., within the corporate limits, the turnpike company does not, after such annexation, have such a title to such portion included with the corporate limits as will entitle it to an injunction against a trespass, committed or threatened, by a street railway company. [Reversed as to this point only by the Supreme Court.]

HOSEA, J.; SMITH and FERRIS, JJ., concur.

Reserved from special term.

The plaintiff alleges its ownership of a turnpike extend-

ing from the eastern corporation line of Cincinnati to and through the village of Milford and beyond; and that the defendant is proceeding to distribute rails and ties along and upon the roadway of plaintiff, in and through said village with a view to the construction of a street railway thereon without its consent; and prays for injunction.

A temporary order was granted, as of course, and the cause brought on for final hearing upon issues formally made in pleadings duly filed, and was reserved to the general term for argument and determination, upon the pleadings and bill of evidence.

Defendant answers, among other things, that on May 9, 1888, the village of Milford was extended to include the portion of the plaintiff's turnpike west of the Miami river to the crossing of the turnpike under the Little Miami railroad, a distance of about 1750 feet, which then and thereafter became a public street of said village; that prior to and until said extension, plaintiffs had maintained upon said portion of the turnpike, a tollgate which was then removed.

For the purpose of the present case further recitals of the pleadings will be unnecessary.

The testimony establishes these facts together with the further fact that a considerable portion of the village of Milford lies in Clermont county, which is divided from Hamilton county at that point by the Little Miami river; and only that portion of the turnpike, namely, the 1750 feet above referred to, lies in Hamilton county.

These facts raise an important jurisdictional question not considered in the argument, but which must be determined at the outset, for consent can not give jurisdiction. The suit being to enjoin trespass upon lands, the question is, whether the court has jurisdiction as to lands outside the county.

Undoubtedly, the general rule in respect to contracts of conveyance or other obligations of like nature, relating to an extra-territorial corpus, is, that equity will entertain such suits where it has jurisdiction of the person; but, as was said by Lord Nottingham in *Carteret* v. *Petty,* 2 Swanst., 324, speaking of jurisdiction in cases of extra-territorial torts:

"All this is to be understood of cases where imprisonment of the person is the most proper means to effect that which is decreed to be done, viz., the payment of money, making a conveyance and the like. But when no obedience of the person or any act of his can sufficiently execute such a decree, then it is vain to hold such a plea."

This is quoted with approval in *Morris* v. *Remington*, 1 Par. Eq. Cas. (Pa.), 387, 391, which is a leading case on the subject in this country. The following from the syllabus will sufficiently indicate its character as an authority, premising that the suit was to enjoin defendant from committing a nuisance affecting plaintiff's land in another county, by diversion of a water-course, and that demurrer to the jurisdiction was sustained.

"Where imprisonment of the person is the most proper means to effect that which is decreed to be done, viz.: the payment of money, making a conveyance or the like, the jurisdiction is local. But where no obedience of the person or any act of his can sufficiently execute such a decree, then jurisdiction is not local.

"To justify a court of chancery in exercising jurisdiction in case touching lands in foreign counties, the relief sought must be of such a nature as the court is capable of administering in the given case. * * * To give a complete remedy in case of nuisance, in a court of equity, it must include the restraint and prevention of the contemplated nuisance, the removal of such nuisance when perpetrated, and compensation in damages for injuries resulting from such nuisance, in such cases. Nor must restraint and removal fall short of doing entire justice to the party aggrieved. * * *

"But for a court of equity to give this ample relief, the *locus in quo* must be within the absolute jurisdiction of the court."

The discussion, in the case cited, reviews all the leading authorities and is most complete and satisfactory.

The application of the doctrine to the case at bar, eliminates all considerations affecting that portion of the turnpike lying in Clermont county, and confines attention to

the 1750 feet included within West Milford in Hamilton county; and as to this portion, we think the case is governed by Section 3491, Revised Statutes.

Prior to 1880, this statute provided in substance that: Where, by the creation of a village or the extension of its limits, a tollgate is brought within such limits or within eighty rods thereof, it should be removed, etc., and compensation made therefor. On April 4, 1880, Section 3491, Revised Statutes, the statute was amended by the insertion of new matter, so as to read as follows [the new matter being shown in italics] :

"No company shall hereafter erect a tollgate and collect tolls within the limits of any city or village or within eighty rods of such limits; and where, by the creation of a village, or the extension of the limits of a city or village, a tollgate is brought within such limits, or within eighty rods thereof, the company shall remove the tollgate to a point on its road not nearer to such limits than eighty rods, *and so much of its road as is included within the limits of such city or village shall become a public street, and be kept in repair as other public streets; but no toll shall be taken thereon;* but compensation shall be made to the company for the damages it will sustain by reason of such removal of its tollgate, *and surrender of such part of its road,* and if the company and the proper authorities of the city or village do not agree thereon, the damages shall be ascertained in proceedings which the municipal authorities shall commence, to appropriate such property to the use aforesaid, in the manner provided by law, for the appropriation of property by municipal corporations, or, in default of such agreement, or the institution of such appropriation proceedings, the company, at any time after the removal of the tollgate, may recover the same from the city or village, by civil action."

The cases cited by plaintiff in support of the contention that it was not the intention of this statute to divest turnpike companies of their property, were decided upon the law as it existed before the amendment of April 4, 1880, Section

3491, Revised Statutes, was made. Citing them to the present law seems to be an anachronism. The amended law clearly indicates the intention, and upon the facts of this case the application is also clear. A similar construction and ruling was made upon a similar statute in *Tremains-ville Plankroad & Tpk. Co.* v. *Toledo,* 31 Ohio St., 588, wherein the question of the constitutionality of the law was touched upon, though not strenuously urged in argument. The objection that compensation must be made in money before the property of the citizen is taken for public uses, does not apply to property taken *"for the purpose of making or repairing roads, which shall be open to the public without charge."* Section 19, Article I, Constitution.

It has been repeatedly held, in such cases, that it is not necessary to make compensation in advance, but it is sufficient if provision be made by law for compensation so that the owner may have compensation if he desires. *Bates* v. *Cooper,* 5 Ohio, 115; *Toledo* v. *Preston,* 50 Ohio St., 361; *Joyce* v. *Barron,* 67 Ohio St., 264, 272.

The word "making," as used in the constitutional provision above cited, has been construed, in a similar context in a statute, to include, "or otherwise becoming possessed," thus covering the acquirement of roads already existing. McIlvaine, C. J.; in *Extension of Lower River Road Co.* v. *Riverside (Vil.),* 25 Ohio St., 658, 666.

It was and is the duty of village councils to take full and entire supervision and control of all public highways, bridges, etc., within the corporation; and the fact of annexation of territory including a roadway, and its continuous use as a street, constitutes it a public highway under the law. *Steubenville* v. *King,* 23 Ohio St., 610.

Under the statute and authorities cited, we are of opinion that the plaintiff has not shown such title as is required as a basis of injunction; and the temporary order must be dissolved and the petition dismissed; and it is so ordered.

*C. W. Baker,* for plaintiff
*Burch & Johnson* for defendant.